EVANGELISH LUTHERISH ST. MARTINS GEMEINDE OF THE TOWN OF BELLE PLAINE, WISCONSIN, Respondent, vs. PRUESS, Appellant.

*September 18—October 5, 1909.*

*Subscriptions: Conditions: Acceptance: Withdrawal: Religious societies: Corporations* de facto.

1. A subscription for the building of a church, made upon condition that the subscriber should not be called upon for certain work and that the church corporation should accept it as being in full of his share of the expense of building, was a mere offer until accepted as stipulated.

2. Where no other kind of acceptance is stipulated for, a subscription may be accepted by expending money and erecting a building in accordance with the offer.

3. The evidence in this case is *held* not to show, as matter of law, acceptance of a subscription upon the condition stipulated, before a withdrawal thereof.

4. Notwithstanding informalities in its articles of incorporation, a religious society which has accepted from a member thereof a subscription to a building fund is, as to the subscriber, a corporation *de facto.*

APPEAL from a judgment of the circuit court for Shawano county: JOHN GOODLAND, Circuit Judge. *Reversed.*

For the appellant there was a brief by *Wallrich, Dillett & Larson,* and oral argument by *A. S. Larson.* They cited,

among other cases, *First M. E. Church v. Sweny,* 85 Iowa, 627, 52 N. W. 546; *Golden v. Meier,* 129 Wis. 14, 107 N. W. 27; 27 Am. & Eng. Ency. of Law (2d ed.) 285; *U. S. Grant University v. Bentley,* 117 Wis. 260, 94 N. W. 42; *Leland Norwegian L. Cong. v. Larson,* 121 Iowa, 151, 96 N. W. 706; *Wiswell v. Bresnahan,* 84 Me. 397, 24 Atl. 885; *M. E. Church v. Sherman,* 36 Wis. 404; *La Fayette Co. M. Corp. v. Magoon,* 73 Wis. 627, 24 N. W. 17; *Powers v. Rude,* 14 Okl. 381, 79 Pac. 89.

*P. J. Winter,* for the respondent, cited, besides other authorities, *Vogt v. Schiencbeck,* 122 Wis. 491, 100 N. W. 820; *Milwaukee C. Asso. v. King, F. & M. Co.* 112 Wis. 647, 88 N. W. 598; *Coman v. Wunderlich,* 122 Wis. 138, 99 N. W. 612; *Superior C. L. Co. v. Bickford,* 93 Wis. 220, 67 N. W. 45; *Gibbons v. Grinsel,* 79 Wis. 365, 371, 48 N. W. 255; *Hodges v. Nalty,* 104 Wis. 464, 80 N. W. 726; *S. C.* 113 Wis. 567, 89 N. W. 535; *Lathrop v. Knapp,* 37 Wis. 307.

TIMLIN, J. This action was brought upon a subscription agreement signed by the appellant and others underwriting the following:

"We, the undersigned members of the *Evangelish Lutherish St. Martins Gemeinde* in the town of Belle Plaine, Shawano county, Wisconsin, pledge ourselves to pay the amount subscribed back of our names in such rates as are stated in this list for the building of the new church in the year 1907."

The appellant subscribed $200, $100 thereof payable in January, 1907. At the close of the testimony the court directed a verdict in favor of the respondent and against the appellant for $200 with interest. This subscription was made in November or December, 1906. The building of the church commenced in June, 1907. Prior to that time, and soon after the subscription was made, building material was purchased by the respondent.

It is shown by the evidence of both respondent and appellant that appellant signed this subscription list at the instance of the Reverend Karpinski, the pastor of the church, and one Meisner, and that there was a conversation immediately preceding appellant's signing, substantially to the effect that appellant would sign and make his subscription $200, provided he should not be called upon for team work and upon condition that the corporation should accept this subscription in full of his share of the expense of building the church. The two persons soliciting the subscription agreed that the subscription with this condition attached should be brought before the congregation for acceptance. There is considerable confusion in the testimony. The record of the meeting of the respondent corporation contained the following:

"Meeting of the congregation on May 5, 1907, *August Pruess* declared that he would be a member of this congregation no longer. It was decided upon that the pastor and two deacons should go to *August Pruess* and talk over this declaration or this matter with him."

Meisner at a meeting of the congregation, the date of which is not given, informed the congregation of the condition upon which this subscription was obtained and the necessity for accepting the subscription. The record of a meeting of the congregation on May 19, 1907, contained the following:

"Resolved that *August Pruess* cannot be released from the membership of the congregation before he pays his debts which he has with the congregation."

A witness on the part of the respondent testified that the subscription of *Pruess* was accepted by the congregation, but he did not know when this meeting was held, but it must have been in May, 1907. The pastor testified that the subscription was accepted by the congregation in the fore part of the summer of 1907.

The appellant testified in his own behalf, not very clearly,

it is true, but apparently relative to the meeting of May 5th. He gave the following testimony:

"There was no meeting before May 5th. . . . I went out. mad, and Koehler came after me, and I told him after this I would not pay them a ——— —— cent. Thereupon they called that meeting of May 5th for that purpose to accept it. David Meisner made a motion that they should accept it. They simply refused to vote on it, no action made whatever. Thereupon I made a motion to ask them to release me from the church; that they would not vote on. Then I asked them to withdraw that subscription, give me a chance to sign like them so I could stand to pay afterward. They simply voted that down. They did not want it. Thereupon I left and ceased to be a member. . . . I told them I would not have anything more to do with that church and would not pay a cent any more."

After this he was waited upon by the pastor and another member of the congregation. They said to him the congregation had done wrong in that they would not accept it, and that they were going to accept it after that provided he came back to the church, and he told them he did not want to come back.

In the face of this positive testimony on the part of the appellant and the uncertain testimony on the part of the respondent as to the time of acceptance of the subscription, it is difficult to see on what grounds the circuit court directed a. verdict for the respondent. The subscription was a mere offer until accepted by the respondent. *M. E. Church v. Sherman,* 36 Wis. 404; *U. S. Grant University v. Bentley,*. 117 Wis. 260, 94 N. W. 42; 27 Am. & Eng. Ency. of Law (2d ed.) 280, 285.

In the case at bar this legal quality of a subscription was. accentuated by the designation to the person soliciting the subscription by the appellant of the body which should accept his subscription and the concessions that body should make by such acceptance. It is true that acceptance of a subscription may be made by expending money and erecting a.

building in accordance with the offer. *Superior C. L. Co. v. Bickford,* 93 Wis. 220, 67 N. W. 45; *Eycleshimer v. Van Antwerp,* 13 Wis. 546. But in the instant case another kind of acceptance was expressly stipulated for, and, besides, there is no proof that the congregation accepted this prior to its attempted withdrawal by erecting a building or disbursing money relying on such subscription.

We forbear to comment further on the evidence. Another trial may disclose a different state of facts or result in clearer and more definite statements from the same witnesses, or show that the attempted revocation by the appellant was after the subscription was accepted by the congregation of the respondent, upon the conditions stipulated. We regard the complaint as sufficient, but are constrained to reverse the judgment appealed from because the court below erred in directing a verdict for the respondent. As to the appellant so contracting, if a contract was really closed, notwithstanding informalities in the articles of incorporation the respondent was at least a corporation *de facto.*

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded for further proceedings according to law.